INSURANCE LITIGATORS & COUNSELORS, PLC.
Attila Panczel (SBN: 250799)
Joseph John Turri (SBN: 181994)
419-J Talmage Road
Ukiah, California 95482
Tel. (707) 462-6117
Fax. (707) 230-5525
insterminator@aol.com
Attorneys for Plaintiff Richard P. Parducci
[Additional Attorneys on Back Page]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Richard P. Parducci, as conservator for and on behalf of Margarett Parducci and as Trustee of the JOHN A. PARDUCCI AND MARGARETT L. PARDUCCI SURVIVOR'S TRUST dated December 29,1987,<br><br>                  Plaintiff,<br><br>vs.<br><br>Overland Solutions, Inc., AMCO Insurance Company and Does 1-20,<br><br>                  Defendants. | CASE NO.:<br><br>Complaint for Damages and Injunctive Relief: Unlawful, Unfair and Fraudulent Practices (Cal. Bus. & Prof. Code § 17200 *et seq.*), Breach of the Covenant of Good Faith and Fair Dealing pursuant to California Insurance Code §785, Breach of Contract, Intentional Misrepresentation, Negligent Misrepresentation and Elder Abuse [Financial]<br><br>Jury Trial Demanded |

Plaintiff, Richard P. Parducci, as  the  duly appointed conservator (appointed October 19, 2018) for Margarett Parducci and as Trustee of the JOHN A. PARDUCCI AND MARGARETT L. PARDUCCI SURVIVOR'S TRUST Dated December 29,1987, on his own behalf and as the representative of a class of persons similarly situated, alleges as follows:

## GENERAL ALLEGATIONS

### The Parties

1.      John A. Parducci and Margarett L. Parducci, were initially the trustees of their revocable trust and handled their own affairs until sometime in 2008 at which time they appointed Richard P. Parducci, their grandson, to be their agent under a power of attorney to assist them with the administrative tasks of the trust. As time went on Richard Parducci assumed more duties and in September of 2014, after John had passed away, he took over control and responsibility for the Parducci trust and for Margarett's affairs because Margarett had become mentally incapacitated.  Plaintiff, Richard P. Parducci (hereinafter "Parducci" and/or "Plaintiff") now brings this action on behalf of Margarett Parducci as her recently appointed conservator and as Trustee of the JOHN A. PARDUCCI AND MARGARETT L. PARDUCCI SURVIVOR'S TRUST dated December 29, 1987 (hereafter "Trust").  Plaintiff was at all times mentioned herein a resident of Mendocino County in the State of California.

2.      Overland Solutions, Inc., (hereinafter "Overland" and/or "Defendant") is a corporation organized and existing under the laws of the State of Delaware with its primary corporate office located in Overland Park, Kansas.  Castle Inspection Service is a division of Defendant Overland and provides personal lines surveys, including replacement cost analysis and loss prevention assessments, on high value homes for AMCO and other insurers.

3.      Defendant, AMCO Insurance Company (hereinafter "AMCO" and/or "Defendant") is a corporation organized and domiciled in the State of Iowa and is licensed and authorized to engage in the business of insurance.  Defendant AMCO is authorized to do business under the laws and regulations of the State of California.

4.     Defendants, DOES 1 through 20, are sued herein under fictitious names because their true names and capacities are unknown to Plaintiff.  When the true names and capacities of these persons or entities are ascertained, Plaintiff will amend this complaint by inserting their true names herein.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and each proximately caused the senior Parduccis' damages. Furthermore, Plaintiff alleges that at all times herein mentioned each of the Defendants was the agent and/or employee/employer of each of the remaining Defendants, and in doing the things alleged were acting within the scope of such capacity and ratified each other's acts.

5.     The conduct, acts, omissions, and practices of the Defendants were, and/or are likely to, and did in fact deceive reasonable members of the public, including Plaintiff and others similarly situated.

6.     Defendants' scheme was designed to hide their misconduct from Plaintiff and from members of the alleged class.  In fact, it was not until 2016, after consultation with and through investigation by their attorneys, that Plaintiff discovered the Defendants' fraudulent plan. Plaintiff could not have made an earlier discovery despite reasonable diligence because Defendants do not share any of the details surrounding their replacement cost valuation calculations with their customers.

**The Underlying Facts**

7.     At all times mentioned herein both John and Margarett Parducci were over the age of 65 and were entitled to all of the protections afforded them under California Insurance Code § 785.  In addition, the Parduccis were considered "elders" within the meaning of California

Welfare and Institutions Code § 15610.27 and, as elders, were entitled to all the protections and remedies afforded them under these code sections.

8.     One of the assets contained in the Parducci Trust was the home in which John and Margarett Parducci resided. This home was located at 1396 Crane Road, Ukiah, CA 95482 in the County of Mendocino.

9.     Plaintiff is informed and believes that the senior Parduccis' residence has been insured with AMCO since at least 2008.  The senior Parduccis, due to their advanced age and frailties, relied on AMCO and its agents to place the proper amount of insurance on their home and to ensure that they were not taken advantage of through the sale of uncollectable and/or useless and/or unnecessary insurance coverage.

10.     Pursuant to his duties and responsibilities as Trustee of the Trust, Plaintiff requested from AMCO's agent, Mark Davis Insurance Agency, Inc., a 7-year history of the amount of insurance that was being carried on the senior Parduccis' residence, together with an accounting of the premiums for the coverage on the structure, and an explanation of how the replacement cost had been determined for each year that the property had been insured.  He made this request because it appeared to him that the replacement cost number placed on the residence for the then current year's policy had resulted in the home being grossly over-insured.

11.     In response, only a limited amount of documentation and information was provided to Plaintiff and, as of this date, Plaintiff still cannot determine whether the documents provided are complete and accurate and cover the entire period during which the Parducci home was over-insured.

12.     Based upon the limited documentation that was obtained by Plaintiff, it appeared that the Parduccis' home had been over-insured for at least 6 years, resulting in the payment of

excessive premiums for coverage that the family would never be able to collect if there had been a loss. This fact was confirmed by Plaintiff's own investigation.

13.     The original replacement value placed on the home by AMCO in 2010 (based on a report by Overland Surveys) was $1,525,000.00.  AMCO increased the insured value of the residence through the years until finally, in policy year 2016-2017, the insured replacement value reached $1,766,900.00.  At each yearly increase AMCO represented that the values they had assigned were accurate.   In actual fact, those replacement cost values were grossly inflated.

14.     In 2016 Plaintiff moved the Parduccis' policies to a new AMCO agent in the hope of obtaining an accurate replacement valuation.  In early 2016, the new agent estimated that the replacement value of the Parducci residence should be between $855,000 - $925,000, depending on the value of certain fixtures.  In response to that agent's estimate, Plaintiff sought the opinion of various contractors and architects in the area who confirmed that the Parducci residence could be replaced at that time for between $140 and $170 per square foot, bringing the total replacement cost for the approximately 6000 square foot home to between $840,000 and $1,020,000.

15.     Plaintiff thereafter requested that the amount of coverage for the residence be reduced to reflect a more realistic replacement cost value. The agent forwarded plaintiff's request to AMCO but AMCO refused to change the replacement value under the policy and refused to lower the coverage, claiming that the higher replacement cost as reflected in the existing policy was correct, effectively leaving the Parduccis over-insured.  Defendant claimed that the dwelling coverage insurance limits issued by AMCO had been calculated based upon an accurate replacement cost derived from their survey, appraisal and inspection methodology.

16.     Throughout the years, due to their advancing age and frailty, the senior Parduccis had relied on AMCO and its agents to treat them honestly, fairly and in good faith by placing the proper amount of insurance on their home.   The Parduccis' reliance was both reasonable and justified as AMCO and it agents (with whom the senior Parduccis had had a long-term relationship) were licensed by the State of California to sell insurance and were bound by both California Insurance Code §785 and California Welfare and Institutions Code §15610.27. As a result, when AMCO and its agents recommended the amount of insurance the Parduccis should purchase in order to properly protect their home, the Parduccis believed them.  Furthermore, the Parduccis' reliance upon the Defendants' representations concerning the replacement cost of their residence was further justified and reasonable in light of the extensive replacement cost reports furnished by Overland Solutions that purportedly supported the amounts that AMCO claimed were necessary to properly insure the residence.  As a result, the Parduccis relied on AMCO and its agents to evaluate, secure and service the insurance policies needed to properly protect them and their trust assets.

17.     Contrary to the representations made by AMCO based on Overland's reports, the actual replacement cost of the Parduccis' residence in early 2017 was approximately $766,900 less than what was represented by AMCO and its agents. This resulted in the Parduccis being over-insured by approximately 77% and also resulted in them paying premiums for coverage that they could never collect.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d), because: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the

action is pled as a class action involving more than 100 putative class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant."

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this case as a class action on behalf of those persons who were harmed by Defendants' (1) violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), (2) breach of the covenant of good faith and fair dealing, (3) negligent misrepresentations, (4) breach of contract and (5) Elder Abuse [Financial].  All the information necessary to determine the class members and the damages that those members have suffered are in Defendants' possession or control.

20.     The Class is defined as follows:

> All owners of a dwelling coverage insurance policy issued by AMCO Insurance Company that insured a dwelling in California on a replacement cost basis utilizing AMCO or its agent's survey, appraisal or inspection methodology to calculate the dwelling coverage limits.

21.     Plaintiff also seeks to represent a sub-class of persons defined as follows:

> All Owners over the age of 65 of a dwelling coverage insurance policy issued by AMCO Insurance Company that insured a dwelling in California on a replacement cost basis utilizing AMCO or its agent's survey, appraisal or inspection methodology to calculate the dwelling coverage limits.

22.     Plaintiff also seeks to represent a sub-class of persons defined as follows:

> All Owners of a dwelling coverage insurance policy issued by AMCO Insurance Company that insured a dwelling in California on a replacement cost basis utilizing a survey, appraisal or inspection by Overland Solutions, Inc. to calculate the dwelling coverage limits.

23.     Plaintiff excludes from the class and subclasses any person in bankruptcy (or whose obligations have been discharged in bankruptcy), counsel of record, judicial officers, members of the judiciary, Defendants and their related persons, agents, employees, officers, and/or directors.  Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise the class definition to maintain a cohesive class that does not require individual inquiry to determine liability.

### Common Questions of Law and Fact Predominate

24.     There are common questions of law and fact of general interest to the class.  These common questions of law and fact predominate over questions affecting only individual members of the class.  Included among the common questions are:

    a.   Whether Defendants' business practices were unlawful;

    b.   Whether Defendants' business practices were unfair.

    c.   Whether Defendants' business practices were deceptive.

    d.   Whether Defendants' engaged in a widespread and systematic practice which led to Plaintiff and members of the putative class paying more for homeowner's insurance coverage;

    e.   Whether an injunction is necessary to keep Defendants from continuing to engage in the wrongful conduct alleged herein;

    f.   Whether Defendants' conduct as alleged herein is unconscionable;

    g.   Whether Defendant AMCO breached its contract.

    h.   Whether Defendants conspired to commit the wrongful acts alleged herein.

    i.   Whether Defendants breached the covenant of good faith and fair dealing.

j.   Whether Defendants committed Elder Abuse [Financial];

k.   Whether Plaintiff and members of the putative class were damaged by Defendants' business practices;

l.   Whether the Defendants violated California Insurance Code § 330-332 (concealment);

m.   Whether the Defendants violated California Insurance Code § 350-361 (representations);

n.   Whether the Defendants violated California Insurance Code § 780;

o.   Whether the Defendants violated California Insurance Code § 785;

p.   Whether the Defendants violated California Insurance Code § 790, *et seq.,* specifically §§ 790.02 and 790.03; and

q.   Whether the Defendants have ceased to engage in the wrongful conduct alleged herein.

### **Typicality and Numerosity**

25.    The claims of the named Plaintiff are typical of the claims of the class the total number of members of the putative class exceeds one hundred (100) members.

### **Adequate Representation**

26.    The named Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members.  Plaintiff has retained class counsel who are competent to prosecute class actions and are financially able to represent the class.

### **Superiority**

27.    The class action mechanism is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the class is

impracticable. The class action mechanism provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court. The interests of judicial economy favor adjudicating the claims of Plaintiff and putative class members as a class rather than for Plaintiff and putative class members on an individual basis.

28.     Defendants have acted on grounds applicable to the class as a whole, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**FIRST CAUSE OF ACTION**
**Unlawful, Unfair and Fraudulent Business Practices**
**(Cal. Bus. & Prof. § 17200, et seq.)**
**(As to Defendants AMCO, Overland and Does 1-6)**

29.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

30.     Plaintiff brings this claim individually, on behalf of the class, and on behalf of the general public.

31.   By reason of the conduct and scheme described herein, Defendants have engaged in unlawful, deceptive and unfair business practices within the meaning of California Business and Professions Code § 17200, *et seq.* Defendants' acts and practices offend an established public policy and Defendants have engaged in immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers, including Plaintiff and the class.

32.   The unlawful business practices perpetrated by the Defendants and their agents, employees, subsidiaries and contractors include violations of California Civil Code Section 1572 (actual fraud), California Civil Code Section 1573 (constructive fraud), California Civil Code Section 1709 (deceit), California Civil Code Section 1711 (deceit to defraud public or class),

California Insurance Code Section 780 (misrepresentation of benefits or privileges promised under the terms of an insurance policy), California Insurance Code Section 785, et seq. (and specifically §§ 790.02 and 790.03) (senior insurance), California Insurance Code Sections 330 - 332 (concealment), California Insurance Code Sections 350-361 (representations) and other portions of the California Insurance Code and related regulations and rules.  Such acts include, but are not limited to:

          a.  issuing a policy of insurance for greater than the replacement cost of the dwelling;

          b.  misrepresenting that the dwelling coverage limits were accurate;

          c.  making statements that were known, or should have been known, to be a misrepresentation to a policyholder by an insurer for the purpose of inducing the sale of an insurance policy

          d.  omitting the truth of, and the true reasons for, the designation of the dwelling coverage limits;

          e.  engaging in unfair or deceptive acts or practices in the business of insurance.

33.  On information and belief, Defendants failed to provide proper dwelling coverage limits and/or replacement cost values, as required under the policy, and as required by the California Insurance Code and other applicable governmental statutes and codes.

34.  Upon information and belief, Defendants' wrongful conduct in violation of §17200, *et seq.* is ongoing and continues to this date.

35.     There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

36.     The Defendants treated the Plaintiff and members of the proposed Class unfairly.

37.     Defendants' actions, claims, nondisclosures and misleading statements, as alleged in this Complaint, were both likely and intended to deceive Plaintiff and members of the public. Plaintiff and class members have in fact been deceived and have relied on Defendants' representations and omissions.  For example, Plaintiff's insurance policy provides: "You are encouraged to obtain a current estimate of the cost to rebuild your home ***from your insurance agent, broker or insurance company*** or an independent appraisal from a local contractor, architect or real estate appraiser." (Emphasis added).  This reliance has caused harm to Plaintiff and class members.  Plaintiff and class members have suffered injury in fact, have been disadvantaged and have lost money as a result of Defendants' unlawful, unfair and deceptive practices.

38.     As a result of their unfairness and deception, Defendants have been able to reap unjust revenue and profit.  Restitution is, therefore, appropriate and the Plaintiff asks that this Court order restitution.  Further, unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate

39.     Plaintiff is informed and believes and thereupon alleges that in committing these acts, Defendants have acted intentionally, oppressively, maliciously, fraudulently, unlawfully and unfairly with a conscious disregard of the Plaintiff's rights, with the intent of benefiting themselves financially and with the intent of causing, or recklessly disregarding the probability

of causing, injury to the Plaintiff.  In so acting, Defendants intended to and did vex, annoy, injure, oppress and harass the Plaintiff.

40. Upon information and belief, the Defendants' wrongful conduct in violation of § 17200, et seq., is ongoing and continues to this date.  As a result of this conduct, the Plaintiff and members of the proposed class demand restitution and injunctive relief against Defendants, including but not limited to requiring full and accurate disclosure of all material facts to all individuals and entities affected by the Defendants' acts or omissions, and such other relief that this Court deems just and proper.

### SECOND CAUSE OF ACTION
### Breach of the Covenant of Good Faith & Fair Dealing
### (As to Defendant AMCO and Does 1-9)

41.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

42.     Plaintiff is informed and believes and thereupon alleges that Defendants have breached the implied covenant of good faith and fair dealing owed to Plaintiff under the policies referred to above and pursuant to California Insurance Code §785 which states: "***All insurers,*** brokers, agents ***and others*** engaged in the transaction of insurance owe a prospective insured who is age 65 years or older, a duty of honesty, good faith and fair dealing.   This duty is in addition to any other duty, whether express or implied, that may exist."

43.     The Defendants breached these duties owed to the Parduccis by engaging in the following acts, amount others:

   a.     Refusing to acknowledge that they have a duty to the Parduccis to perform an accurate calculation of the replacement cost of their

residence and, instead, utilizing a replacement cost analysis that they knew was wrong and in conflict with AMCO'S in-house system.

    b.    Failing to conduct a reasonable inquiry concerning the accuracy of their replacement cost estimate after being put on notice of its error.

    c.    Failing to give the Parduccis' interest at least as much consideration as their own by misrepresenting the amount of coverage needed to cover the replacement of the Parduccis' residence and by collecting excessive premiums from these seniors for insurance coverage that they could never collect.

    d.    Failing to provide a reasonable explanation of the basis for their calculation of replacement cost and their subsequent refusal to lower the replacement cost figure placed on the residence so as to reflect an accurate value and thereby lower the premiums charged to the senior Parduccis.

    e.    Compelling Plaintiff to institute litigation to recover the excess premiums that Defendants have charged due to their wrongful conduct.

44.    As a proximate result of Defendants' wrongful conduct, the Parduccis have suffered actual and consequential damages, out-of-pocket costs and other foreseeable economic losses, all of which have damaged them in an amount that will be proved at trial.

45.    Plaintiff is entitled to recover any and all attorney fees, costs, and expenses reasonably incurred during the course of his efforts to obtain reimbursement of the premiums that have been wrongfully collected by the Defendants.

46.     Defendants have acted intentionally, oppressively, maliciously, fraudulently and with a conscious disregard of the Parduccis' rights and the rights of all members of the proposed class, in order to benefit themselves financially and with the intent of causing, or recklessly disregarding the probability of causing, injury to the senior Parduccis.  In so acting, Defendants intended to and did vex, annoy, injure, oppress and harass the senior Parduccis.  As a result of such conduct, the Parduccis and members of the proposed class are entitled to exemplary and punitive damages.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(As to Defendant AMCO)**

47.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

48.     During the period from October 18, 2015 through October 18, 2016, Plaintiff possessed an insurance contract (Policy No.:  HA 0010221189-6) with AMCO.

49.     Plaintiff's insurance contract with AMCO provides:

"The Coverage A Dwelling limit shown on your declarations page is an estimated replacement cost based on general information about your home.  It is developed from models that use cost of construction materials and labor rates for like homes in the area.  The actual cost to replace your home may be significantly different.  Allied does not guarantee that this figure will represent the actual cost to replace your home.  You are responsible for selecting the appropriate amount of coverage and you may obtain an appraisal or contractor estimate, at your own expense, which Allied will consider and accept, if reasonable.  Higher coverage limits may be selected and will result in higher premiums."

50.     In early 2016, Plaintiff's insurance agent estimated that the replacement value of the Parducci residence should be between $855,000 - $925,000, depending on the value of certain of the fixtures. Various contractors and architects in the area also confirmed that the

Parducci residence could be replaced at between $140 and $170 per square foot, bringing the total replacement cost for this approximately 6000 square foot home to between $840,000 and $1,020,000.

51.     Plaintiff presented these appraisal estimates to AMCO.   Without providing evidence of unreasonableness, AMCO breached the contract by refusing to change the replacement value under the policy and refusing to lower the coverage, claiming that the higher replacement cost as reflected in the existing policy was correct, effectively leaving the Trust over-insured.   Defendant claimed that the dwelling coverage insurance limits issued by AMCO on the policy that insured the Parducci dwelling had been calculated based upon a replacement cost basis utilizing an accurate survey, appraisal or inspection methodology.

52.     Plaintiff fully performed its obligations under the contract and has suffered damages as a result of AMCO's breach of the insurance contract.

53.     To the extent Defendant AMCO claims that it reserved the ultimate discretion to set the replacement value of the Parducci residence, Defendant AMCO has breached the covenant of good faith and fair dealing implied in its contract with Plaintiff.

54.     In every contract or agreement, including the insurance contract at issue here, there is an implied promise of good faith and fair dealing, which means that each party will do nothing to unfairly interfere with the right of any other party to receive the benefits of the contract.   To the extent that Defendant AMCO contends that it had discretion to set the replacement value of the Parducci residence, the law reads a duty of good faith into Defendant AMCO's exercise of such discretion in order that the agreement should not be rendered illusory. Defendant AMCO exercised its discretion in bad faith under the contract by over-valuing the replacement cost of the Parducci residence and by, in turn, over-insuring the Parducci residence

in order to generate higher profits through greater premium payments. It was Defendant AMCO's practice to breach the insurance contracts it entered into with policyholders.

55. Plaintiff is informed and believes and thereupon alleges that in committing these acts, Defendant AMCO has breached the terms of the Plaintiff's contract, as well as the contracts of the members of the proposed class. As a result of Defendant AMCO's breach, the Plaintiff and members of the proposed class are entitled to compensatory damages.

**FOURTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**(As to Defendants AMCO, Overland and Does 1-12)**

56. Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

57. At policy renewal in October 2015 and again in October 2016, Defendant AMCO represented to the Plaintiff that "[y]ou are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company…" Plaintiff earlier had received replacement cost estimates from AMCO generated by AMCO's agent Overland.

58. In 2010 Defendants represented to the Plaintiff that they had performed a thorough inspection of the Parducci residence and had determined that, based on a report by Overland, the true replacement cost of their residence in 2010 was $1,525,000.00. Thereafter AMCO continued to increase the replacement cost on the residence through the years until finally in policy year 2016-2017, the quoted replacement value reached $1,766,900.00. As AMCO increased the replacement cost values over the years they also continually represented to the Parduccis that these values were correct and that the premiums for these values were fair and necessary in order to properly protect their home.

59.     In actual fact, these replacement cost figures were grossly inflated and should have been significantly reduced.  As a result, the premiums paid by the Plaintiff and other AMCO insureds over the years were significantly inflated and premiums were paid for coverage limits that could never have been collected.

60.  Section 785 of the California Insurance Code states that: "All insurers, brokers, agents and others engaged in the transaction of insurance owe a prospective insured who is age 65 years or older, a duty of honesty, good faith and fair dealing.   Notwithstanding this directive, by misrepresenting and mischaracterizing the accuracy of their replacement cost coverages, Defendants have engaged in a course of conduct that has improperly inflated coverages and premiums on the Parduccis' residence and on those of the members of the class.

61.   Defendants intended that the Parduccis and members of the class rely upon Defendants' misrepresentations in order to induce the Plaintiff and members of the class  to purchase insurance coverage in an amount that Defendants falsely represented would accurately reflect the actual replacement cost of each customer's dwelling when in fact the Defendants knew that these amounts were inflated and that neither the Plaintiff nor any member of  the class would or could ever be reimbursed these sums in the event that a claim was made.  Defendants also knew or should have known that their representations concerning replacement cost were in fact false in as much as their own replacement cost calculators, had they been correctly employed, would have revealed their miscalculations.

62.     The Parduccis reasonably relied on Defendants' representations because of their long-term relationship with AMCO and because they had continually been reassured by Defendants that the policies in fact reflected the appropriate coverage for their residence.  For example, Plaintiff's insurance policy provides: "You are encouraged to obtain a current estimate

of the cost to rebuild your home *from your insurance agent, broker or insurance company* or an independent appraisal from a local contractor, architect or real estate appraiser." (Emphasis added). Furthermore, Defendants were statutorily obligated to service the senior Parduccis' insurance policies in such a manner as to insure their accuracy. Because of Defendants' long-term relationship with the senior Parduccis, the Plaintiff had no reason to suspect that their insurance policies were not in order and, as a result, reasonably relied on all of the Defendant's numerous assurances that they had provided and were continuing to provide the necessary and correct amounts of insurance to adequately protect their home. The Parduccis were led to believe that they were being treated honestly, fairly and in good faith and specifically that they were not being charged premiums for coverage upon which they could never collect. Had the senior Parduccis known that they were paying premiums for coverage that they would never collect they would not have purchased the inflated coverage from Defendants and would have saved thousands of premium dollars.

63.     As a result of the misrepresentations made by Defendants, the senior Parduccis were damaged when AMCO inflated their homeowner's coverage and wrongfully took premiums from these seniors for coverage on a home that was grossly over-insured.

64.     Furthermore, this breach is the legal and proximate cause of the actual and consequential damages suffered by the Parduccis and members of the proposed class, including the attorneys' fees and costs and expenses incurred by Plaintiff in connection with the recapture of these excess premiums, together with other foreseeable economical losses, all in an amount exceeding $75,000.00 as will be shown by proof at trial.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation
### (As to Defendants AMCO, Overland and Does 1-12)

65.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

66.     In 2010 Defendants AMCO, its agents and Overland represented to the senior Parduccis and later to the Plaintiff that they had performed a thorough inspection of the Parducci residence and had determined, based on a report by Overland, that the true replacement cost of the residence in 2010 was $1,525,000.00.  Thereafter AMCO increased the replacement value on the residence through the years until finally, in policy year 2016-2017, the quoted replacement value reached $1,766,900.00.  As AMCO increased the replacement cost values over the years it also continued to represent to the Parduccis and to Plaintiff in its written appraisals that AMCO's stated values were correct and that the premiums for those values were fair and necessary in order to properly protect the Parducci home.

67.     In actual fact, it was Defendants AMCO's and Overland's business plan to purposefully inflate the replacement cost figures assigned to the Parducci property and to other properties insured by them.  As a result, the premiums paid by the Trust and other AMCO insureds were significantly inflated over the years, and premiums were paid for coverage limits that could never be collected.

68.     Defendants knew or should have known that the senior Parduccis and the Plaintiff as well as  members of the class would rely upon Defendants' misrepresentations in order to induce the Parduccis and Plaintiff as well as members of the class to purchase insurance coverage in an amount that Defendants mistakenly represented would accurately reflect the actual replacement cost of each customer's dwelling when in fact the Defendants should have

known that these amounts were inflated and that neither the senior Parduccis, Plaintiff nor any member of the class would or could ever actually be reimbursed these sums in the event that a loss was incurred. Defendants also should have known that their representations as to replacement costs were in fact mistaken in as much as their own replacement cost calculators, had they been correctly employed, would have revealed the nature of their miscalculations.

69.     The senior Parduccis and subsequently the Plaintiff reasonably relied on Defendants' representations because of their long-term relationship with AMCO and because they were constantly reassured by Defendants and their agents that the policies provided them with the proper amount of coverage. Furthermore, Defendants were statutorily obligated to service the senior Parduccis' insurance policies in such a manner as to assure that they were correct. Because of Defendants' long-term relationship with the senior Parduccis, the Parduccis and subsequently the Plaintiff had no reason to suspect that the insurance policy was not in order and as such Plaintiff initially reasonably relied on all of Defendant's numerous assurances to provide the necessary and correct amount of insurance to adequately protect the  residence and to insure the trust was being treated honestly, fairly and in good faith and not being charged premiums for coverage upon which it could never collect. Had the Plaintiff known that the Trust was paying for coverage that could never be collected he would not have purchased the inflated policy from the Defendants and would have saved the Trust thousands of dollars in insurance premiums.

70.     Defendants clearly intended for Plaintiff to rely upon their representations and those of their agents since their policy of insurance provides: "You are encouraged to obtain a current estimate of the cost to rebuild your home ***from your insurance agent, broker or***

*insurance company* or an independent appraisal from a local contractor, architect or real estate appraiser." (Emphasis added).

71.     Beginning in 2010 and through each successive policy renewal, Defendants AMCO, its agents and Overland misrepresented the adequacy of their dwelling coverage limits through their written appraisals and policy documents and suppressed the fact that the Plaintiff's dwelling coverage limits were inflated.  Moreover, prior to the 2016 renewal of Plaintiff's insurance policy, Defendant AMCO and its agents misrepresented the fact that AMCO would accept a reasonable replacement cost value if submitted by Plaintiff for consideration by AMCO.

72.     Furthermore, Defendants owed Plaintiff a special duty, due to the nature of the insurer-insured relationship, as defined by California Insurance Code Section 785, to refrain from misrepresenting the terms and benefits of an insurance policy and to refrain from charging premiums for coverage on insurance policies for which full coverage could never be collected.

73.     As a result of the negligent representations made by Defendants, the Trust was damaged when AMCO inflated the homeowner's coverage and wrongfully took premiums from the trust for coverage that could never be collected because the Trust property was grossly over-insured.

74.     In addition, Plaintiff has been injured because it has been required to pay attorneys' fees, costs and expenses incurred in connection with the recapture of the excess premiums, all in a sum exceeding $75,000 to be shown by proof at trial.

### SIXTH CAUSE OF ACTION
### Elder Abuse, Financial
### (As to Defendants AMCO, Overland and Does 1-15)

75.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

76.     At all times herein mentioned the senior Parduccis, were sixty-five years of age and considered "Elders" within the meaning of the California Welfare and Institutions Code Section § 15610.27.

77.     Furthermore, due to their relationship with the Parduccis, Defendants owed them a special duty, as defined by California Insurance Code Section 785, to refrain from misrepresenting the terms and benefits of the insurance policy and to refrain from charging premiums for coverage for insurance policies on which the Parduccis could never collect because their home was grossly over-insured.

78.     Plaintiff is informed and believes and thereupon alleges that Defendants have committed "financial abuse of an elder" within the meaning of California Welfare and Institutions Code § 15610.30, subdivision (a), by "taking, secreting, appropriating, or retaining the personal property of an elder for a wrongful use or with intent to defraud, or both".

79.     Plaintiff is informed and believes and thereupon alleges that pursuant to California Welfare and Institutions Code § 15610.30(b), a person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith, just as the Defendants have done in this case by breaching their duties owed to Margarett Parducci under  California Insurance Code Section 785 and misrepresenting the replacement value of her home in order to gain additional premiums for insurance coverage that could never be collected by the elder Parduccis.

80.     Plaintiff, as conservator for and on behalf of Margarett Parducci, is informed and believes and thereupon alleges that, in addition to other damages, Plaintiff is entitled to

recover his reasonable attorney fees and costs pursuant to California Welfare and Institutions Code § 15657.5, subdivision (a).

81.   Plaintiff is informed and believes and thereupon alleges that in committing these acts, Defendants have acted oppressively, maliciously and fraudulently, with a conscious disregard of the Parduccis' rights and the rights of the members of the proposed class, with the intent of benefiting themselves financially and with the intention of causing, or recklessly disregarding the probability of causing, injury to the Parduccis and members of the proposed class. In so acting, Defendants intended to and did vex, annoy, injure and harass the senior Parduccis and members of the proposed class. As a result of such conduct, the Parduccis and members of the proposed class are entitled to exemplary and punitive damages as well as damages pursuant to California Civil Code § 3345.

WHEREFORE, Plaintiff, prays for judgment against Defendants as follows:

## AS TO THE FIRST CAUSE OF ACTION
### (Unlawful, Unfair and Fraudulent Business Practices)

1.   For restitution in an amount subject to proof;

2.   For injunctive relief; and,

3.   For reasonable attorneys' fees, costs and expenses incurred by Plaintiff.

## AS TO THE SECOND CAUSE OF ACTION
### (Breach of the Covenant of Good Faith & Fair Dealing)

1.   For actual damages in an amount subject to proof;

2.   For consequential damages in an amount subject to proof.

3.   For exemplary and punitive damages in an amount appropriate to punish Defendants and set an example for others; and,

4.      For reasonable attorneys' fees, costs and expenses incurred by Plaintiff in his efforts to obtain policy benefits wrongfully withheld by the Defendants.

**AS TO THE THIRD CAUSE OF ACTION**
**(Breach of Contract)**

1.      For actual damages in an amount subject to proof;

2.      For consequential damages in an amount subject to proof;

3.      For general damages in an amount subject to proof; and,

4.      For costs and expenses incurred by Plaintiff.

**AS TO THE FOURTH CAUSE OF ACTION**
**(Intentional Misrepresentation)**

1.      For actual damages in an amount subject to proof;

2.      For consequential damages in an amount subject to proof;

3.      For exemplary and punitive damages in an amount appropriate to punish, deter, and set an example for other.

**AS TO THE FIFTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**

1.      For actual damages in an amount subject to proof;

2.      For consequential damages in an amount subject to proof; and

3.      For costs and expenses incurred by Plaintiff.

**AS TO THE SIXTH CAUSE OF ACTION**
**(Elder Abuse, Financial)**

1.      For actual damages in an amount subject to proof;

2.      For consequential damages in an amount subject to proof;

3.      For general damages in an amount subject to proof;

4.      For attorney fees;

5.      For exemplary and punitive damages in an amount appropriate to punish, deter and set an example for others;

6.      For damages pursuant to California Civil Code § 3345.

### AS TO ALL CAUSES OF ACTION:

1.      For reasonable attorney fees and expenses incurred herein;

2.      For costs of suit incurred herein;

3.      For prejudgment and post-judgment interest; and

4.      For such other and further relief as the Court deems just and proper.

Dated:  November 16, 2018,                          /s/Joseph JohnTurri
                                                    JOSEPH JOHN TURRI
                                                    Attorney for Plaintiff

ADDITIONAL COUNSEL:                  MCCALLUM, METHVIN & TERRELL, P.C.
                                     ROBERT G. METHVIN, JR.
                                      rgm@mmlaw.net
                                     JAMES M. TERRELL
                                      jterrell@mmlaw.net
                                     P. MICHAEL YANCEY
                                      mvancev@mmlaw.net
                                     The Highland Building
                                     2201 Arlington Avenue South
                                     Birmingham, Alabama 35205
                                     Tel: (205) 939-0199

                                     LAW OFFICES OF LAWRENCE G. PAPALE
                                     LAWRENCE G PAPALE
                                      lgpapale@paplelaw.com
                                     1308 Main Street, Suite 117
                                     Saint Helena, CA 94574
                                     Tel: (707) 963-1704

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs request a trial by jury of all claims alleged herein so triable.

Dated:  November 16, 2018

                                     /s/ Joseph John  Turri
                                     JOSEPH JOHN TURRI
                                     Attorney for Plaintiff