UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD P. PARDUCCI,<br><br>       Plaintiff,<br><br>   v.<br><br>OVERLAND SOLUTIONS, INC., et al.,<br><br>       Defendants. | Case No. 18-cv-07162-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 17, 19, 20 |

Plaintiff Richard P. Parducci ("Parducci") brings suit against defendants AMCO Insurance Company ("AMCO") and Overland Solutions, Inc. ("Overland") for allegedly engaging in a scheme to overcharge customers for homeowners' insurance by intentionally overestimating the replacement cost of homes. Complaint ("Compl.") at ¶ 1 [Dkt. No. 1]. He brings this action on behalf of Margarett Parducci as her recently appointed conservator, as Trustee of the John A. Parducci and Margarett L. Parducci Survivor's Trust (the "Parducci Trust"), and on behalf of a putative class of similarly situated customers. Id. at ¶¶ 1, 19-23. AMCO and Overland move to dismiss Parducci's complaint. AMCO also moves to strike Parducci's class action claims.

Parducci has failed to plead fraud with the requisite particularity to satisfy Federal Rule of Civil Procedure 9(b), cannot state a claim under California Insurance Code section 785, for which there is no private right of action, and has not stated a claim for breach of contract because of operation of the voluntary payments doctrine. Accordingly, because no claims survive, I grant AMCO's and Overland's motion to dismiss. I deny AMCO's motion to strike class allegations as premature and moot.

## I.    THE REPLACEMENT COST OF THE PARDUCCI HOME

Parducci is the grandson of Margarett Parducci and the late John. A Parducci (the "Senior Parduccis"). *Id.* at ¶ 1. During the relevant time period, the Senior Parduccis were both over the age of 65 and resided in a home located in Ukiah, California. *Id.* at ¶¶ 7-8. The home is held by the Parducci Trust and has been covered by a homeowners replacement cost insurance policy issued by AMCO since at least 2008 under policy number HA0010221189. *Id.* at ¶¶ 8-9; Exhibits A-F, attached to AMCO Insurance Company's Request for Judicial Notice ("RJN") in Support of Motion to Dismiss Complaint and Motion to Strike Class Action Allegations [Dkt. No. 18-1].[2] Parducci alleges that his grandparents, due to their advanced age and frailties, relied on AMCO and its agents to treat them fairly and place the proper amount of insurance on their home. *Id.* at ¶¶ 9, 16.

Replacement cost insurance allows recovery of the actual value of property at the time of loss, without deduction for deterioration, obsolescence, or similar depreciation of the property's value. 1 A.L.R.5th 817 (Originally published in 1992). Insurers use the estimated replacement value, i.e. what it would cost to rebuild the home or portion of the home in the event of a loss, to determine the appropriate premium. Parducci believes that the replacement value estimate on the Senior Parduccis' residence was too high. Compl. at ¶ 10. At some point while he was trustee, he requested a seven-year history of the amount of insurance carried on the home and an explanation of how the replacement cost had been determined for each year that the property had been insured from AMCO's agent, Mark Davis Insurance Agency. *Id.* He learned that the original replacement value placed on the home by AMCO in 2010 (based on a report by Overland) was $1,525,000.

---

[1] For the purposes of evaluating the motions to dismiss, I accept Parducci's factual allegations as true.

[2] AMCO's request for judicial notice is granted. Because the homeowners policies and notices are central to the allegations in the complaint and Parducci does not dispute their authenticity, I take judicial notice of them. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by reference doctrine extends "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").

*Id.* at ¶ 13. AMCO increased the replacement value of the home until it reached $1,766,900 in policy year 2016-2017. *Id.*

In 2016, Parducci moved the homeowner's policy to a new AMCO agent, hoping to get a new replacement evaluation. *Id.* at ¶ 14. The new agent estimated that the replacement value of the residence should be between $855,000 to $925,000, depending on the value of certain fixtures. *Id.* Parducci then solicited the opinion of various unidentified contractors and architects in the area who estimated the total replacement cost as between $840,000 and $1,020,000. *Id.* He then used these estimates to request that AMCO reduce the amount of coverage to reflect the lowered home replacement cost. *Id.* at ¶ 15. AMCO refused to lower the replacement cost, claiming that the higher replacement cost reflected in the policy was correct. *Id.*

Parducci alleges that the actual replacement cost of the residence in early 2017 was approximately $1,000,000, $766,900 less than what was represented by AMCO and its agents. *Id.* at ¶ 17. He posits that this resulted in the home being over-insured by approximately 77% and caused the Senior Parduccis to pay premiums for coverage that they could never collect in the event of a total loss. *Id.*

## II.     NOTICES CONTAINED IN THE INSURANCE POLICY

The homeowners policy contains several notices that are relevant to this suit. AMCO claims that they were provided to Parducci or the Senior Parduccis with each policy renewal for at least six years. They state in relevant part:

> READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY: The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide the details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. . . . *It is important to take the time to consider whether the limits and limitations of your policy meet your needs.* Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.
>
> . . .
>
> THE RESIDENTIAL DWELLING COVERAGE LIMIT: The coverage limits on the dwelling structure should be high enough so you can rebuild your home if it is <u>completely</u> destroyed. Please note:

3

> • The cost to rebuild your home is almost always different
> from the market value.
> . . .
> • The cost to rebuild your home should be adjusted each year
> to account for inflation.
> . . .
>
> *You are encouraged to obtain a current estimate of the cost to rebuild
> your home from your insurance agent, broker, or insurance company
> or an independent appraisal from a local contractor, architect, or
> real estate appraiser.* If you do obtain an estimate of replacement
> value, and wish to change your policy limits, contact your insurance
> company. While not a guarantee, a current estimate can help protect
> you against being underinsured.

RJN, Ex. G at pp. 1-2). (emphasis added). A separate notice also states

> The Coverage A Dwelling limit shown on your declarations page is
> an estimated replacement cost based on general information about
> your home. It is developed from models that use cost of
> construction materials and labor rates for like homes in the area.
> *The actual cost to replace your home may be significantly different.*
> *Allied does not guarantee that this figure will represent the actual*
> *cost to replace your home. You are responsible for selecting the*
> *appropriate amount of coverage* and you may obtain an appraisal or
> contractor estimate, at your own expense, which [AMCO] will
> consider and accept, if reasonable. Higher coverage limits may be
> selected and will result in higher premiums.

(*Id.* Ex. H) (emphasis added).

## III.    PARDUCCI'S CLAIMS

Parducci asserts a number of claims against AMCO and Overland. As to both AMCO and Overland, he brings claims for (i) unlawful, unfair, and fraudulent business practices under Cal. Bus. & Prof. § 17200, et seq.; (ii) intentional misrepresentation; (iii) negligent misrepresentation; and (iv) financial elder abuse. *Id.* at ¶¶ 29-40, 56-81. Against only AMCO, he brings claims for (i) breach of the covenant of good faith and fair dealing and (ii) breach of contract. Id. at ¶¶ 41-55.

All claims are brought on behalf of a putative class. *Id.* at ¶¶ 19-28. Parducci seeks to define the class as:

> All owners of a dwelling coverage insurance policy issued by AMCO
> Insurance Company that insured a dwelling in California on a
> replacement cost basis utilizing AMCO or its agent's survey,
> appraisal or inspection methodology to calculate the dwelling
> coverage limits.

Id. at ¶ 20.  He also seeks to represent two sub-classes.  The first is defined as:

> All Owners over the age of 65 of a dwelling coverage insurance policy issued by AMCO Insurance Company that insured a dwelling in California on a replacement cost basis utilizing AMCO or its agent's survey, appraisal or inspection methodology to calculate the dwelling coverage limits.

Id. at ¶ 21.  The second sub-class is defined as

> All Owners of a dwelling coverage insurance policy issued by AMCO Insurance Company that insured a dwelling in California on a replacement cost basis utilizing a survey, appraisal or inspection by Overland Solutions, Inc. to calculate the dwelling coverage limits.

Id. at ¶ 22.

## LEGAL STANDARD

### I.  MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).  In deciding a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as

true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II.    MOTION TO STRIKE

Courts in this district are split on whether a motion to strike class allegations is proper at the motion to dismiss stage. Many judges have held that they may not be. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-cv-1803 EMC, 2014 WL 1048710, at *3-4 (N.D. Cal. Mar. 14, 2014) (denying motion to strike class action allegations because Rule 12(f) is not the proper vehicle for such a motion); *Clerkin v. MyLife.Com*, No. 11-cv-00527-CW, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011) ("Defendants fail to identify any authority permitting the use of a motion to dismiss for failure to state a claim to contest the suitability of class certification."); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387-PJH, 2011 WL 2111796, at *13–14 (N.D. Cal. May 26, 2011) ("[S]uch a motion appears to allow a determination of the suitability of proceeding as a class action without actually considering a motion for class certification."); *Swift v. Zynga Game Network, Inc.*, No. 09-cv-05443-SBA, 2010 WL 4569889, at *10 (N.D. Cal. Nov. 3, 2010) (denying motion to strike class action allegations based on Ninth Circuit precedent indicating that Rule 12(f) is not the proper vehicle for such a motion).

Some judges have held that such a motion may be brought at the motion to dismiss stage but that it should be granted only rarely. *See Allagas v. BP Solar Int'l Inc.*, No. 14-cv-00560-SI, 2014 WL 1618279, at *3 (N.D. Cal. Apr. 21, 2014) ("A defendant may move to strike class actions prior to discovery where the complaint demonstrates a class action cannot be maintained on the facts alleged therein."); *In re Apple, AT & T iPad Unlimited Data Plan Litig.*, No. 10-cv-02553-RMW, 2012 WL 2428248, at *2-3 (N.D. Cal. June 26, 2012) (motions to strike class action allegations may be brought at the motion to dismiss stage but are disfavored); *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 990 (N.D. Cal. 2009) (Fogel, J.) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."). These judges have held that a motion to strike class claims based

only on the pleadings is proper only if the court is "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *In re iPad Unlimited Data Plan Litig.*, 2012 WL 2428248 at *2; *see also Allagas*, 2014 WL 1618279, at *3; *Sanders*, 672 F.Supp.2d at 990.

## DISCUSSION

### I. AMCO'S MOTION TO DISMISS

#### A. Responsibilities of an Insured

AMCO argues that California law and the homeowner's policy place responsibility for selection of policy limits on the insureds, not the insurer, and that the entire Complaint should be dismissed on that basis alone. AMCO Insurance Company's Notice of Motion and Motion to Dismiss Plaintiff's Complaint ("AMCO MTD") at 4-6 [Dkt. No. 17]. According to AMCO, it was up to the Senior Parduccis to determine if the replacement cost estimate utilized by AMCO would provide coverage in excess of what they needed and that they cannot now complain that AMCO should have charged them less. *Id.*

AMCO relies heavily on E*verett v. State Farm Gen. Ins. Co.*, 162 Cal. App. 4th 649, 660-61, (Cal. Ct. App. 2008), but it is distinguishable. *Id.* There, the policyholder lost her home to fire and the insurance company argued that it had no obligation to pay for code upgrades to the policy limits. *Id.* at 653-54. The policy initially guaranteed replacement cost coverage, but years before the fire, the insurance company gave notice to its policyholder that it was no longer going to offer guaranteed replacement cost coverage. *Id.* at 652-53. Instead, the policy in *Everett* contained a replacement cost provision stating that the insurer "will pay up to the applicable limit of liability shown in the Declarations, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations[.]" *Id.* at 654.

The policyholder argued that that under the California Insurance Code, the insurance company was liable for its failure to maintain her policy limits equal to the replacement costs. *Id.* at 660. The court disagreed, holding that it was up to the policyholder to determine whether she had sufficient coverage for their needs. *Id.* It cited the insurance company's renewal notices that reminded policyholders that the replacement cost figure in their policy was merely an estimate and

that it was up to the policyholders to determine they were adequately insured. *Id.* at 661. It noted that there was nothing in the record to suggest that the original policy limits were inadequate and that, as the replacement cost increased, the policyholder never requested an increase in her coverage. *Id.* As a result, the policyholder's breach of contract claim failed because she did not fulfill her duty to ensure that her home was sufficiently covered. *Id.*

AMCO contends that the same result is warranted here. It notified the Parduccis that:

> The actual cost to replace your home may be significantly different. Allied does not guarantee that this figure will represent the actual cost to replace your home. You are responsible for selecting the appropriate amount of coverage and you may obtain an appraisal or contractor estimate, at your own expense, which [AMCO] will consider and accept, if reasonable.

(RJN at Ex. H). But this is a different case than *Everett*.

The core allegation here is that AMCO and Overland engaged in a scheme to deceive customers and overcharge them based on inflated replacement value estimates. In *Everett*, the policyholder did not allege that the insurer was engaging in a comparably fraudulent scheme. The fraud allegation in *Everett* revolved around whether the plaintiff had been informed that her homeowner's policy no longer contained full replacement cost coverage. E*verett*, 162 Cal. App. 4th at 644. That failure to inform claim is far different than the active deception alleged here. AMCO's argument that it was up to the Senior Parduccis to determine if the allegedly fraudulent replacement cost estimate utilized by AMCO would provide coverage in excess of what they needed is meritless, at least at the pleading stage.

## B. Plaintiffs' Tort Claims

Rule 9(b) requires Parducci's causes of action for intentional misrepresentation, negligent misrepresentation, and elder abuse to be pleaded with specificity because each claim sounds in fraud. In order to adequately allege a claim sounding in fraud under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). The complaint generally describes a scheme between AMCO and Overland involving Overland providing inflated replacement cost value estimates of homes to AMCO,

allowing AMCO to overcharge customers on their premiums.  Compl. at ¶¶ 2-3, 9-17.  But Parducci's allegations do not meet the specificity required by Rule 9(b) for claims sounding in fraud.

### 1.    Intentional and Negligent Misrepresentation

AMCO argues that where a corporation has made an alleged misrepresentation, the complaint must identify the name of the person who made the alleged misrepresentation and that person's authority to speak on behalf of AMCO.  *Id.* at 12 (citing *Livermore v. Wells Fargo Bank*, No. 17-cv-03347-BLF, 2017 WL 6513649, at *9 (N.D. Cal. Dec. 20, 2017) ("assertions that unspecified 'agents' told plaintiff that he would qualify for a loan modification, and instructed him that it was not necessary to pay his mortgage, are insufficient to meet the heightened pleading standard for fraud claims"); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (Cal. Ct. App. 1991) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.") (citations omitted); *Land O'Lakes v. Gonsalves*, 281 F.R.D. 444, 451 (E.D. Cal. 2012) (same)).  It also contends that the intentional misrepresentation claim fails because Parducci has not pleaded reasonable reliance[3] and has failed to set forth the alleged misrepresentations against the trust.[4]  *Id.* at 13.

_____

[3] To assist the parties when the complaint is amended, reliance is sufficiently pleaded as is. Parducci claims that even when providing estimates, AMCO represented that its replacement cost value was correct and led the Senior Parduccis to believe that they were being treated honestly, fairly and in good faith.  *Id.*  He also contends that even though AMCO may have encouraged the Senior Parduccis to "obtain an appraisal or contractor estimate," AMCO rejects the estimates obtained by Parducci in favor of its own allegedly inflated amounts.  *Id.*  As noted in the discussion on the applicability of *Everett* in Section I.A., that the Senior Parduccis had notice that they were responsible for selecting the appropriate amount of coverage is immaterial for pleading purposes given the fraudulent overvaluing scheme alleged in the complaint.  Further, although the Senior Parduccis were told that AMCO's valuation was only an estimate, an insured may assume that the estimate was created in good faith and cannot be expected to assume that the estimate is fraudulent.  That the Parduccis were encouraged to obtain an appraisal or contractor estimate is not dispositive of the question of reliance.

[4] AMCO also contends that Parducci's negligent misrepresentation claim fails to the extent that it relies on Section 785.  *Id.* at 13-14.  As discussed in this order, because Section 785 applies only

United States District Court
Northern District of California

Parducci relies in part on *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 672 (Cal. 1983) to argue that because he has identified the specific roles of AMCO and Overland in the alleged overvaluing scheme the allegations give AMCO sufficient notice to serve the purposes of Rule 9(b). AMCO Oppo. at 16-19. He also contends that the misrepresentations were made by AMCO itself when it refused to accept his alternative estimates of the home's value. To the extent he failed to identify the specific person at AMCO who signed off on the replacement cost value of the residence, he points out that AMCO is in possession of this information and can adequately prepare an answer based on the allegations. *Id.* He argues that AMCO has the appraisals, which it prepared and/or relied on, that would provide the time, date, name of the individual who prepared them, and where they were sent. *Id.* (citing *Children's Television* at 672.

*Children's Television* is distinguishable. There, the complaint alleged "thousands of misrepresentations in various media over a span of four years—representations which, while similar in substance, differ in time, place, and detail of language and presentation." 673 P.2d at 673. The court found that requiring the complaint to allege each misrepresentation precisely would provide less effective notice and be less useful in framing the issues than would a shorter, more generalized version." *Id.*

That is not the situation here, where Parducci has sufficient information to allege the fraud much more specifically to help frame the issues. Basic information is missing, such as who at Overland and AMCO made the specific misrepresentations, when and where the misrepresentations occurred, how Parducci discovered the falsity of the representations, on what basis he realized that AMCO and Overland's statements were misrepresentations, when and how his unidentified new agent forwarded his request to reduce coverage based on his lower replacement value estimates, who at AMCO refused his request, when that request was refused, and what the form of the refusal was.

While Parducci may be correct that prior to discovery, there is no way for him to know

---

to prospective insured and does not create a private right of action, it is not applicable here.

who in AMCO internally rejected his bid to change the replacement cost estimate of his home, he should still allege how he asked to change the replacement cost estimate, when he made the request, and who (to the best of his ability) he communicated with. He does not allege how or when he was informed that his request was denied. Perhaps some of the information I have identified is unknown to him, but he should allege what he can and explain why certain gaps will require discovery. There is no justification to relax Rule 9(b)'s pleading standards when information is equally within his possession as within AMCO's possession. *See Tarmann*, 2 Cal. App. 4th at 158 (the requirement of specificity is relaxed when the allegations indicate that the defendant must necessarily possess full information concerning the facts of the controversy, but the exception is inapplicable when defendant has no more reason to know who made the allegedly false representations than the plaintiff) (citations omitted).[5]

### 2. The Elder Abuse Claim

Parducci brings a financial elder abuse claim against AMCO for violating California Welfare and Institutions Code § 15610.30(a) by "taking, secreting, appropriating, or retaining the personal property of an elder for a wrongful use or with intent to defraud, or both." Compl. at ¶¶ 75-81. Because the Elder Abuse claim also sounds in fraud, it too is deficient under Rule 9(b) and is dismissed with leave to amend.[6]

### C. Claims Under California Insurance Code Section 785

California Insurance Code Section 785 states in relevant part:

> (a) All insurers, brokers, agents, and others engaged in the transaction of insurance owe a prospective insured who is 65 years of age or older, a duty of honesty, good faith, and fair dealing. This duty is in addition to any other duty, whether express or implied, that may exist.

---

[5] AMCO's argument that Parducci failed to set forth with sufficient particularity the alleged misrepresentations against the Parducci Trust, as opposed to the Senior Parduccis themselves is not well taken. AMCO MTD at 13; AMCO Oppo. at 18-19. Richard Parducci began his investigation as a trustee of the trust and the home is an asset of the trust. Compl. at ¶¶ 8, 10.

[6] AMCO's contention that no financial abuse occurred because it received premiums for the rightful purpose of paying for the homeowner's policy fails. AMCO MTD at 14-15. If Parducci can meet Rule 9(b)'s requirements, the allegedly fraudulent scheme alleges that AMCO took or obtained money from the Senior Parduccis to defraud them as the premiums were intentionally higher than necessary to replace the house in the event of a total loss.

> (b) Conduct of an insurer, broker, or agent, or other person engaged in the transaction of insurance, during the offer and sale of a policy or certificate previous to the purchase is relevant to any action alleging a breach of the duty of good faith and fair dealing

Cal. Ins. Code § 785. AMCO argues that Parducci's claims for "bad faith," or breach of the implied covenant of good faith and fair dealing, under California Insurance Code Section 785 fail because Section 785 does not create a private right of action and it applies only to prospective insureds, not people who had insurance like the Senior Parduccis.

I agree with AMCO. Other courts have not found a private right to action under the statute. *See Abbit v. ING USA Annuity & Life Ins. Co.*, 999 F. Supp. 2d 1189, 1198 (S.D. Cal. 2014) (finding that plaintiff failed to demonstrate that Section 785 gives rise to a private right of action); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1090 (S.D. Cal. 2006) (same). Parducci cites to *Mahan v. Charles W. Chan Ins. Agency, Inc.*, 14 Cal. App. 5th 841 (Cal Ct. App. 2017) to argue that such a private right of action exists. AMCO Oppo. at 12-14. But in *Mahan*, the court declined to address whether Section 785 created a private cause of action. *Mahan*, 14 Cal. App. 5th at 868 n.27 ("The trial court did not address whether Insurance Code section 785, subdivision (a), creates a private cause of action, and we decline to address it for the first time on appeal."). Additionally, the Senior Parduccis are not alleged to be prospective insurers in the complaint. The Section 785 claim is dismissed without leave to amend.

### D. Breach of Contract

Parducci bases his breach of contract claim on AMCO's refusal to lower his premium after he provided AMCO with lower estimates of the replacement value of the home. Compl. at ¶¶ 47-55. He alleges that this violates the clause in AMCO's contract that AMCO would consider and accept, if reasonable, an appraisal obtained by Parducci. *Id.* To the extent that AMCO claims that it reserved the ultimate discretion to set the replacement value of the home, Parducci argues that this constituted a breach of the covenant of good faith and fair dealing implied in the contract. *Id.* at ¶ 53.

AMCO moves to dismiss the breach of contract claim under the voluntary payments doctrine because Parducci continued coverage with AMCO after discovering AMCO's alleged

12

breach. AMCO MTD at 10-11. Under the voluntary payments doctrine, "[p]ayments voluntarily made, with knowledge of the facts, cannot be recovered." *Steinman v. Malamed*, 185 Cal. App. 4th 1550, 1557 (Cal. Ct. App. 2010) (citing *W. Gulf Oil Co. v. Title Ins. & Tr. Co.*, 92 Cal. App. 2d 257, 265 (Cal. Ct. App. 1949). AMCO states that Parducci continued to pay the insurance policy for at least two additional terms after discovering the purportedly excessive limits. AMCO Insurance Company's Reply in Support of Motion to Dismiss Plaintiff's Complaint ("AMCO Reply") at 5-6 [Dkt. No. 38]. In support of its argument, AMCO attaches policy statements covering the home from October 18, 2016 to October 18, 2018. *See* Policy Declarations for the policy period 10-18-2017 to 10-18-2018 for Homeowners Policy No. HA 00102211189 attached as Exhibit A RJN [Dkt. No. 18-1]; Policy Declarations for the policy period 10-18-2016 to 10-18-2017 for Homeowners Policy No. HA 00102211189 attached as Exhibit B to RJN [Dkt. No. 18-1].

Parducci counters that the voluntary payments doctrine does not apply to situations involving "fraud, duress, or compulsion" and that AMCO's conduct constitutes fraud. AMCO Oppo. at 14-15 (citing *Stern v. AT&T Mobility Corp.*, No. 05-cv-8842, 2008 WL 11334082, at *8 (C.D. Cal. June 17, 2008) (the doctrine applies only in the absence of mistake of fact, fraud, duress, or compulsion). He states that neither he nor the Senior Parduccis had any knowledge that they were paying inflated premiums until 2016 at the earliest, when Parducci obtained a new AMCO agent and a new replacement value estimate. *Id.* According to Parducci, even in 2016, he had already paid the 2016 premium before discovering the alleged fraud. *Id.*

This does not explain why Parducci continued to purchase the policy during the following two terms. He alleges that he obtained his alternative estimates of the home's replacement cost value in "early 2016," but the policies provided by AMCO show that he continued to purchase the policies through at least October 2018. *See* Policy Declarations for the policy period 10-18-2016 to 10-18-2017 for Homeowners Policy No. HA 00102211189; Policy Declarations for the policy period 10-18-2017 to 10-18-2018 for Homeowners Policy No. HA 00102211189.

Accordingly, the voluntary payments doctrine covers Parducci's conduct. By the time he paid for the coverage starting on October 18, 2016, he was in possession of the alternative estimates. Yet he continued to pay AMCO. He does not explain why he did not change insurance

1  carriers after his estimates of the replacement cost value were rejected.  He has not pleaded that he

2  made the payments under duress or coercion.  Duress can be shown by alleging facts that would

3  lead a reasonably prudent man to find that in order to preserve his property or protect his business

4  interests, it is necessary to make a payment of money that he does not owe and that in equity and

5  good conscience the receiver should not retain.  *Steinman*, 185 Cal. App. 4th at 1558 (citation

6  omitted).  Such circumstances have not been alleged here.

7       AMCO also argues that Parducci's bad faith claim fails because it requires an improper

8  withholding of benefits under an insurance policy and that no such withholding occurred here.

9  AMCO MTD at 10-11 (citing *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (Cal. Ct. App. 1995)).

10  In *Waller,* the court held that the argument that "a bad faith claim cannot be maintained unless

11  policy benefits are due is in accord with the policy in which the duty of good faith is [firmly]

12  rooted."  11 Cal. 4th at 36.  Parducci counters with *Schwartz v. State Farm Fire & Casualty Co.*,

13  88 Cal. App. 4th 1329, 1335 (Cal. Ct. App. 2001), where the court was confronted with an excess

14  insurer facing competing claims from two insured.  88 Cal. App. 4th at 1332.  There, payment of a

15  claim to the first insured would exhaust the limits of the primary insurance policy and leave the

16  second insured unable to collect fully on its benefits.  *Id.*  The court found that the insurer had a

17  duty to protect the interests of the second insured as well as the first.  *Id.*  In doing so, the court

18  reasoned that the "legal principle that a breach of the implied covenant cannot occur 'unless policy

19  benefits are due' refers to whether the policy will eventually cover the claim, and does not depend

20  on when such coverage finally attaches."  *Id.* at 1335.

21       Neither the facts of *Schwartz* nor its holding are helpful to Parducci.  There is no

22  competing insured vying for the same benefits here.  Whether the policy would cover a total loss

23  on the home is also undisputed.  Rather, the issue is that Parducci claims that the home is over-

24  insured.  The breach of contract claim based on AMCO's refusal to accept Parducci's alternative

25  replacement cost estimates is dismissed with leave to amend.

26       **E.   The UCL Claims**

27       AMCO argues that Parducci is not entitled to restitution or injunctive relief under

28  California Business and Professions Code § 17200, et seq. (the "UCL") because Parducci has not

14

met the requirements of Rule 9(b), *Everett* applies (it does not, as discussed above), the filed rate doctrine prohibits challenging the premium rate, and injunctive relief is improper where money damages is an adequate remedy. AMCO MTD at 6-8.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 837 (Cal. Ct. App. 2006). The "unfair" prong of the UCL prohibits a business practice if it "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (Cal. Ct. App. 2006).

Because Parducci's other claims against AMCO have been dismissed, he is unable to state a claim under the "unlawful" prong of the UCL. *Daugherty*, 144 Cal.App.4th at 837. Parducci's claim under the "fraudulent prong" fails to meet Rule 9(b)'s pleading standard as discussed in Section I.B. of this order. Turning to the "unfair" prong, Parducci's claim courts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017) (Koh, J.) (citing *Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (Koh, J.); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009) (Patel, J.), aff'd, 464 Fed.Appx. 651 (9th Cir. 2011)). Here Parducci alleges that AMCO violated the UCL by allegedly engaging in the fraudulent scheme that is the heart of this action; any claim he might have under the unfair prong overlaps completely with his claim under the fraudulent prong.

I dismiss Parducci's UCL claim against AMCO with leave to amend.[7]

### III. OVERLAND'S MOTION TO DISMISS

Parducci brings claims for intentional and negligent misrepresentation, elder abuse, and violation of the UCL against Overland. Compl. at ¶¶ 29-40, 56-81. Like the claims against AMCO, each of these causes of action also sound in fraud because they are based on the same allegedly fraudulent scheme. As discussed in Section I.B. of this order, Parducci's allegations fail to meet the pleading requirements of Rule 9(b). I dismiss Parducci's claims against Overland with leave to amend. Parducci is cautioned to be specific about what he alleges Overland's role to be and which representations and actions were by Overland and which were by AMCO.

Although Parducci's claims against Overland are dismissed under Rule 9(b), Overland

---

[7] AMCO makes two arguments that are not well taken in its motion, which I address here to head off further briefing if possible.

First, the filed-rate doctrine does not apply. AMCO claims that because Parducci seeks to recover a portion of the premiums paid under the homeowner's policy, and because the rate is filed with and approved by the Department of Insurance, no restitution is available under the UCL because courts may not interfere with department ratemaking. AMCO MTD at 7. According to AMCO, the UCL claim is an attempt to retroactively change the approved policy premiums in violation of the filed rate doctrine and would constitute an impermissible reformation of the policy terms. *Id.*

It is unclear if California Courts of Appeal recognize the filed-rate doctrine, as it is a creature of federal law. *See Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1115 (N.D. Cal. 2013) (Ryu, J.) ("As to the filed-rate doctrine, California Courts of Appeal have disagreed over whether California recognizes such a doctrine to preclude challenges to rates filed pursuant to the Insurance Code.") (internal citations omitted). California's statutory scheme does contain an analogous prohibition in Section 1860.1 of the California Insurance Code. *Id.* at 1115 n.5; *Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750, 757 (Cal. Ct. App. 2000). But regardless of whether the doctrine applies under state law, it is inapplicable here because Parducci is not challenging whether the rate AMCO charged was correct for the replacement cost value of the house; he challenges the replacement cost value estimation and claims that the estimate used by AMCO is the product of a fraudulent scheme. He is not questioning the formula and expertise of the Department of Insurance--he is alleging that AMCO's premium is based on the wrong input for the formula and thus leads to the wrong output. The filed-rate doctrine is irrelevant to that claim.

Second, AMCO is wrong to argue that Parducci cannot seek both restitution and equitable relief because if restitution is available, it will redress his injuries. AMCO MTD at 6. The UCL allows a plaintiff to seek both. *See Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) ("Thus, for example, a plaintiff could bring a lawsuit alleging consumer fraud with . . . a separate UCL claim seeking an injunction against the allegedly unlawful activity and the restitution of ill-gotten gains on behalf of the general public.") (internal citation omitted).

argues that his claims fail for a number of other reasons as well.  *See* Overland Solutions, Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint ("Overland MTD") [Dkt. No. 20]. Because these arguments are not well taken, and to head off their repetition in a later motion to dismiss, I will briefly discuss these arguments below.

### A.  Intentional or Negligent Misrepresentation

#### 1.      Direct Representation

Overland argues that Parducci has failed to allege that it made any misrepresentations to him or to the Senior Parduccis because Overland's only role was to prepare the appraisal for AMCO.  Overland MTD at 7-9.  Parducci counters that he is not required to allege that Overland made a direct representation to him or to the Senior Parduccis because Overland knew that its alleged misrepresentation would reach the them and influence their conduct.  Plaintiff's Memorandum of Points and Authorities in Opposition to Overland Solutions, Inc.'s Motion to Dismiss ("Overland Oppo.") at 2-10 [Dkt. No. 30].  He cites  *Vassel v. Carson Helicopters, Inc.*, No. 13-cv-02520, 2014 WL 1912056, at *5 (E.D. Cal. May 13, 2014) and *Geernaert v. Mitchell*, 31 Cal.App.4th 601, 605  (Cal. Ct. App. 1995) for the proposition that a "defendant will not escape liability if he makes a misrepresentation to one person intending that it be repeated and acted upon by the plaintiff."  *Id.*  As the court in *Vassel* held, "plaintiff must plead facts demonstrating defendants, as the maker[s] of the misrepresentation, had information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach [plaintiff] and will influence [his] conduct."  2014 WL 1912056, at *5 (citing *Geernaert*, 31 Cal.App.4th at 607) (quotations and emphasis omitted).

Overland contends that even under the standard articulated in *Vassel* and *Geernaert*, Parducci's claims fail because Overland is not alleged to have provided its appraisal report to AMCO with the intention that it would be repeated or substantively communicated to the Parduccis and that even if it was foreseeably communicated, it was not intended to influence the Parduccis.  Overland Solutions, Inc.'s Reply in Support of Motion to Dismiss Plaintiff's Complaint ("Overland Reply") at 4-5 [Dkt. No. 40].  But under the scheme alleged in the complaint, both of these elements are met.  The crux of the scheme involves Overland, acting as

United States District Court
Northern District of California

AMCO's agent, creating a false overinflated replacement cost estimate to serve as the basis for AMCO's policy premium. If such a scheme were in effect, Overland would know that its allegedly overinflated estimate would reach AMCO's customers, and that the customers would be influenced by Overland's estimated value of their home when purchasing AMCO's insurance policy. Overland ignores Parducci's theory that it and AMCO acted in concert and that it is not merely an unrelated appraiser. Overland's argument on this issue fails.

### 2. Reliance

Overland asserts that Parducci has failed to show that he, or the Senior Parduccis, actually or justifiably relied on any alleged misrepresentations by Overland. Overland MTD at 9-10. It claims that the allegations show that it would be factually and legally impossible for the Parduccis to rely on its report because they did not know of it until 2016 when Parducci requested the insurance history from AMCO. *Id.* According to Overland, a plaintiff can only plead reliance on an expression of personal opinion if the misrepresentation was made for the plaintiff. *Id.* (citing *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (Cal. 1992); *Christiansen v. Roddy*, 186 Cal.App.3d 780, 785-787 (Cal. Ct. App. 1986)). It argues that when a supplier "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the information] on the part of anyone to whom it may be repeated, the supplier bears no legal responsibility." *Id.* (citing *Bily*, 3 Cal. 4th at 410).

Parducci counters that *Christiansen* and *Bily* actually support his claim for reliance and that the holding in *Christiansen* has been limited in subsequent cases. Overland Oppo. at 10-13. (citing *Soderberg v. McKinney*, 44 Cal. App. 4th 1760 (Cal. Ct. App. 1996). He contends that the complaint contains facts that show that the Parduccis relied on Overland's estimate, even as third parties. Overland Oppo. at 10-13.

I find *Soderberg* persuasive and analogous. In *Soderberg*, the court found that a real estate appraiser could be liable for negligent misrepresentation to a third party. 44 Cal. App. 4th at 1767-68. In doing so, it found that that the rule in *Christiansen* as articulated by Overland was no longer good law in light of the holding in *Bily*. In *Christiansen,* the California Court of Appeal ruled that an investor could not be held liable for a negligent misrepresentation made by a real

18

estate appraiser to a loan broker because the appraisal services were performed for the loan broker and not the investors. 186 Cal.App.3d at 787. The court reasoned that there was no evidence that the appraiser knew the investors or that the investors were considering loaning money to be secured by the negligently appraised property until the appraiser was served in the action. *Id.* Therefore, the appraiser could not have intended for the investors to rely on his appraisal and could not be liable to them. *Id.*

But after *Christiansen*, the California Supreme Court decided *Bily,* where it addressed the question of "whether and to what extent an accountant's duty of care in the preparation of an independent audit of a client's financial statements extends to persons other than the client." *Bily*, 3 Cal.4th at 376. The *Bily* court held that "an auditor owes no general duty of care regarding the conduct of an audit to persons other than the client[,]" but that that an auditor may be held liable to reasonably foreseeable third persons for intentional fraud in the preparation and dissemination of an audit report, and "for negligent misrepresentations in an audit report to those persons who act in reliance upon those misrepresentations in a transaction which the auditor intended to influence." *Id.* at 376. Applying the holding in *Bily*, the *Soderberg* court reasoned that *Christiansen*'s rule on negligent representations to third parties was no longer good law and that a real estate appraiser could be found liable for negligent misstatements to third parties. *See Soderberg*, 44 Cal.App.4th at 1770.

The *Soderberg* court held that a defendant could be held liable when, in a business or professional transaction, it makes a representation with the intent to induce plaintiff, or a "particular group or class" of persons to whom plaintiff belongs, to act in reliance on the representations, or where it is reasonably foreseeable that the plaintiff or a "particular group or class" of persons to whom plaintiff belongs would act in reliance on the representations. *Id.* The court reversed summary judgment in favor of investors in an action against a real estate appraiser for negligent misrepresentation among other claims. *Id.* at 1771-72. It held that the appraiser did not establish as a matter of law that he believed his appraisal would be used solely by a mortgage broker. *Id.* The appraiser knew that the plaintiffs belonged to a group or class of persons (potential investors contacted by the broker), who would rely on his report in the course of a

19

specific type of transaction (investing in a deed of trust secured by the appraised property). *Id.* The court held that it did not matter that the broker, rather than the appraiser, transmitted the appraisal report to the plaintiff investors. *Id.*

The situation here is similar because under the alleged scheme, Overland knew that the Parduccis belonged to a group or specific class of persons (homeowners policy customers) who would rely on its inflated estimate in the course of a specific type of transaction (purchasing a homeowners policy). Although Overland argues that it did not and could not have known that the Parduccis would rely on its reports, the valuation in Overland's reports are alleged to be what AMCO based its policy and premiums on. As with the argument related to direct representation, Overland's argument based on reliance fails.

### B. Elder Abuse

Overland contends that the elder abuse claim against it fails because Parducci cannot allege that Overland committed a taking as required by statute. Overland MTD at 10-11. According to Overland, the Senior Parduccis never paid any amount of the allegedly inflated premiums to it, it never received any portion of the premiums from AMCO, and it never benefitted from the allegedly inflated value of the home. *Id.* It also points out that there are no allegations that it recommended or asked the Senior Parduccis to buy insurance from AMCO and that it did not prevent the Senior Parduccis from buying insurance from another carrier. *Id.* Parducci responds that Overland aided AMCO in violating the elder abuse statute, and that it did so in furtherance of a scheme to overcharge the Parduccis for their insurance. Overland Oppo. at 13-17. Parducci also argues that both AMCO and Overland would have known that over-insuring the Senior Parduccis, and thus charging them premiums higher than necessary to cover their home, would harm them. *Id.*

California Welfare & Institutions Code § 15610.30(a)(2) states that financial abuse occurs when a person or entity "[a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." If Parducci is able to meet Rule 9(b)'s requirements, the alleged scheme would be sufficient to allege that Overland assisted AMCO in taking money from the Senior Parduccis with

the intent to defraud them out of premiums in excess of what would be required to fully cover their home.[8]  Overland's argument related to the elder abuse claim also fails.

### C.  The UCL Claims

Parducci's UCL claims fail against Overland for the same reason that they fail against AMCO.  Overland's argument that the Parduccis were free to purchase what they wanted and that their insurance broker would have advised them against any excessively expensive policies is inappropriate at the pleading stage and better left for summary judgment.

## IV.  AMCO'S MOTION TO STRIKE CLASS ALLEGATIONS

AMCO also brings a motion to strike Parducci's class action allegations.  AMCO Insurance Company's Notice of Motion and Motion to Strike Class Action Allegations  [Dkt. No. 19].  It argues that the class allegations do not satisfy the requirements of Rule 23 on their face because individual issues predominate over common questions and class treatment is not the superior method for resolving the claims of any absent putative class members.  *Id.* at 4-10.

Of course, this motion is moot given the dismissal of the complaint.  It is also premature. It is denied without prejudice to renewal at a more appropriate time, once there is an operative complaint and discovery has occurred.

## CONCLUSION

For the reasons stated above, I grant AMCO's motion to dismiss.  I dismiss Parducci's Section 785 claim with prejudice.  Parducci's other claims are dismissed with leave to amend. Overland's motion to dismiss is granted with leave to amend. AMCO's motion to strike class allegations is denied as premature and moot.  Parducci may file an amended complaint within 20 days of this Order.

**IT IS SO ORDERED.**

Dated: July 17, 2019

William H. Orrick
United States District Judge

---

[8] The parties also dispute the applicability of *Mahan v. Charles W. Chan Ins. Agency, Inc.*, 14 Cal. App. 5th 841 (Cal. Ct. App. 2017).  Overland Oppo. at 16-17; Overland Reply at 7-8.  It is not necessary to address these arguments because under the plain language of the elder abuse statute, the complaint would sufficiently state a claim if Rule 9(b)'s requirements are met.